IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| WILLIAM J. CLAUSSEN | ) | |
| and PAMELA L. CLAUSSEN, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 150379C |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appealed Defendant's Notice of Deficiency Assessment for the 2010 tax year,

issued subsequent to a conference decision and dated April 28, 2015. Trial was held before

Magistrate Dan Robinson in the courtroom of the Oregon Tax Court on June 22, 2016. Plaintiff

William J. Claussen (Claussen) appeared and testified on his own behalf. Wilson Muhlheim,

Attorney at Law, appeared on behalf of Plaintiff Pamela L. Claussen, who did not testify. Nancy

Berwick (Berwick), an employee of the Oregon Department of Revenue, appeared and testified

on behalf of Defendant. Plaintiffs' Exhibits 1 to 19 were received without objection.

Defendant's Exhibits A, B, F, and I were received without objection. Defendant's Exhibit D

was received with objection. The majority of Defendant's Exhibit H was received with

objection, but that exhibit's demonstration of the multiplication of Plaintiffs' aggregated monthly

bank deposits by 12 was not received.

/ / /

---

[1] This Final Decision incorporates without change the court's Decision, entered November 21, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

# I. STATEMENT OF FACTS

The parties agreed that Plaintiffs received four discharges of indebtedness totaling $138,288 in 2010. Claussen testified that $130,268 of the debt discharge income arose on January 14, 2010, from forgiveness of mortgage debt on a foreclosed property. Plaintiffs presented evidence to show their insolvency on that date.

A.      *Alleged Liabilities*

1.      *Middleman Guarantee*

Formerly, Claussen was president of a business called First U.S. Pallets, Inc., doing business as Caliber Forest Products (Caliber). (*See* Ptfs' Ex 16 at 1, 4.) On August 15, 2006, Caliber entered into a "Factoring Agreement" with Middleman Northwest, Inc. (Middleman). (Ptfs' Ex 16.) Under the terms of that agreement, Middleman would pay Caliber for invoices, *i.e.*, the right to receive payment from Caliber's customers. (*Id*. at 1, ¶ 2.) Caliber warranted that every invoice it sold to Middleman would be "for products delivered and/or services performed." (*Id*. at 2, ¶ 3.) If Caliber's customers did not pay their invoices, Middleman could demand payment from Caliber. (*Id*., ¶ 5.)

Claussen signed the Factoring Agreement as president of Caliber, and also signed the following "Personal Guaranty":

> "The undersigned does hereby irrevocably and unconditionally guaranty full payment and performance of all conditions and terms of this Agreement. It is expressly understood by the undersigned that in the event a breach of the Agreement occurs, this Personal Guaranty Agreement may be enforced directly against the undersigned regardless of the rights Factor has against Caliber, without presentment of notice of any kind, and without instituting or exhausting any remedies against Caliber."

(Ptfs' Ex 16 at 5.)

/ / /

Despite its warranty in the Factoring Agreement, Caliber sold invoices to Middleman without having first delivered product to Caliber's customers. Claussen testified that Caliber got behind in its shipments when the price of lumber dropped precipitously. Caliber's customers did not pay on invoices for unshipped product and, as a result, Middleman had the right to demand over $2 million from Caliber by 2008. Claussen testified that Caliber failed in 2008 and that Middleman had at that time demanded payment, but that his documentation of this—and of his entire financial situation—was incomplete because he had failed to request the return of documents seized by the FBI during a May 2009 raid on his office.

Claussen was convicted of wire fraud on account of conduct he engaged in from August 2007 through at least January 2008. (Ptfs' Ex 19 at 1.) The federal court ordered Claussen to pay over $2.1 million in restitution to "Middleman NW." (Ptfs' Ex 19 at 5.) That court issued its judgment in August 2014, at which time it found that Claussen was unable to pay interest on the restitution and waived the interest requirement. (*Id.*)

Claussen provided 2008 and 2009 Form 1065 partnership returns for an entity named FUSP LLC, which listed "Middleman Payable" as a $2,024,000 current liability in both years. (Ptfs' Ex 17 at 13; Ex 18 at 15.) Claussen testified that he had brought a partner into his pallet business, and the partnership returns listed Claussen and one William Wiley as 50 percent owners. (Ptfs' Exs 17; 18.) In 2008, FUSP LLC reported $4 million in gross receipts and sales, but $3.6 million in ordinary losses after deductions. (Ptfs' Ex 17 at 1.) It reported no gross receipts and sales in 2009, $4 million in assets, and $1 million in ordinary losses. (Ptfs' Ex 18 at 2.)

/ / /

/ / /

2. *Other Debt*

Claussen testified that, as of December 31, 2009, Plaintiffs also had debts from credit cards, real property mortgages, automobile loans, medical bills, taxes owed, court judgments, and other business debts. One credit card statement showed Plaintiffs carrying a balance of over $26,000 as of August 18, 2009. (Ptfs' Ex 9 at 2.) A collection letter demanded payment of over $30,000 on the same account on March 4, 2010. (*Id*. at 4.) Additional accounts with a cumulative balance of over $40,000—less a few thousand dollars conceded by way of settlement—were evidenced by a credit card statement and collection letters dated September 2009, February 2010, April 2010, and May 2010. (*Id*. at 5-6, 8-10.)

With respect to real property mortgages, Plaintiffs provided a single page from a "Foreclosure Repayment Agreement," showing that they had missed all mortgage payments to that lender from June 2009 to February 2010, and that over $27,000 was required to cure the default. (Ptfs' Ex 10 at 2.) A statement for a second mortgage on the house from another lender showed a principal balance of over $38,000 and a few hundred dollars past due as of August 2009. (*Id*. at 3.)

Regarding taxes owed, Plaintiffs provided a federal Notice of Levy, dated March 31, 2009, demanding almost $275,000 from Claussen. (Ptfs' Ex 13 at 2.) A Notice of Federal Tax Lien, dated May 2009, reported an unpaid balance of over $46,000. (*Id*. at 4.) Plaintiffs also provided distraint warrants from Defendant, dated November 2008 through February 2010, showing unpaid withholding tax from the last quarter of 2007 through the first quarter of 2009 amounting to over $59,000. (*Id*. at 5-8.)

Plaintiffs provided two documents purporting to show judgment debts. The first was an unsigned form of stipulated general judgment. (Ptfs' Ex 14 at 2-3.) The second was a Limited

Judgment from Clackamas County Circuit Court, dated July 2009, awarding a creditor over $590,000 from FUSP LLC and Claussen. (*Id*. at 4-5.)

With respect to business debts, Plaintiffs provided a statement from U.S. Bank stating that Claussen had a balance of over $60,000 among various credit accounts as of February 2011. (Ptfs' Ex 15 at 2.) A collection letter addressed to Claussen in August 2008 threatened to pursue legal action against him as guarantor of a $53,000 business debt. (*Id*. at 4-5.) An August 2009 letter addressed to FUSP LLC, Claussen, William Wiley, and another entity stated that repossessed equipment would be auctioned to satisfy an $87,000 debt. (*Id*. at 3.)

As evidence of medical bills, Plaintiffs provided a single credit card statement showing a relatively small balance of $335 owing in October 2009. (Ptfs' Ex 12 at 2.) That statement showed that Plaintiffs had incurred a $175 finance charge after carrying a $160 balance from the previous month.

Although Claussen testified that loans were outstanding on their automobiles on December 31, 2009, Plaintiffs did not provide documentation of those loans.

B.      *Alleged Assets*

Plaintiffs prepared multiple statements of their assets as of December 31, 2009. According to the "balance sheet" Plaintiffs submitted into evidence, Plaintiffs held approximately $900,000 in assets as of that date. (Ptfs' Ex 4 at 1.) According to a "financial statement" and "insolvency worksheet" previously prepared by Plaintiffs and submitted into evidence by Defendant, Plaintiffs held approximately $1,350,000 in assets on December 31, 2008, and on January 14, 2010. (*See* Def's Ex F at 3–7.)

Claussen testified that the difference between the balance sheet and the financial statement was largely due to the inclusion on the financial statement of the foreclosed property

for which the treatment of forgiven mortgage debt is the subject of this appeal. The financial statement attributes a value of $275,000 to that property.[2] (Def's Ex F at 4.) The financial statement also includes a $150,000 note receivable from First U.S. Properties, Inc. that is not on the balance sheet. (*Id.* at 3.) A parenthetical under the entry for that note on the financial statement reads "collection doubtful." (*Id.*)

Plaintiffs' balance sheet contains the following line items under the heading "assets": $3,216 in bank accounts; $725,000 in real estate; $58,500 in automobiles; and $110,038 in "other assets." Among the "other assets," $76,338 was assigned to the "Shriver Family Trust," which Claussen testified was his wife's inheritance. (Ptfs' Ex 8 at 1.) Plaintiffs' financial statement had included only $20,000 in "other assets" apart from automobiles, but also included $71,000 in "privately held stocks and interests." (Def's Ex F at 3, 4.)

Plaintiffs submitted statements from ten bank accounts—some personal, some business—from November 2009 through January 2010. (Ptfs' Ex 5 at 2-11.) The statements indicated balances as reported by Plaintiffs. They also indicated that $94,553.73 was collectively deposited—with roughly offsetting withdrawals—across nine of the ten bank accounts during the given statement periods. (*Id.*; Def's Ex H at 1.)

The 2010–11 real property tax statement for Plaintiffs' home listed its real market value as $276,940. (Ptfs' Ex 6 at 2.) A property information printout from the county website listed the 2008-09 tax roll real market value of Plaintiffs' rental property as $418,170. (*Id.* at 6.)

Plaintiffs did not provide documentation of the value of their automobiles or their other assets.

/ / /

---

[2] Claussen stated that several entries on Plaintiffs' 2010 tax return were in error, including an entry stating that the foreclosed property was sold for $394,900 on January 6, 2010. (*See* Ptfs' Ex 3 at 3.)

Plaintiffs request that their debt discharge income be excluded from their gross income because they were insolvent. Defendant requests that its adjustment be affirmed.

## II. ANALYSIS

The issue in this case is whether Plaintiffs qualify for the insolvency exception under IRC section 108 and may therefore exclude debt discharge income from their 2010 gross income.

The burden of proof as to questions of fact in this court falls upon the party seeking affirmative relief—in this case, Plaintiffs. *See* ORS 305.427.[3] That burden is sustained by a "preponderance of the evidence." *Id.* Preponderance of the evidence is the lowest degree of proof required by courts, and is satisfied by a showing that "the facts asserted are more probably true than false." *Cook v. Michael*, 214 Or 513, 527, 330 P2d 1926 (1958).

Oregon's personal income tax is imposed on the "entire taxable income" of residents. ORS 316.037(1)(a). Taxable income is "as defined in subsection (a) or (b), section 63 of the Internal Revenue Code, with such additions, subtractions and adjustments as are prescribed by this chapter." ORS 316.022(6). IRC section 63(a) defines taxable income as "gross income minus the deductions allowed by this chapter." Gross income, in turn, is "all income from whatever source derived," including "[i]ncome from discharge of indebtedness." IRC § 61(a)(12).

Debt discharge income is excluded from gross income—and therefore from taxable income—if "the discharge occurs when the taxpayer is insolvent." IRC § 108(a)(1)(B). Insolvency is defined by IRC section 108(d)(3):

/ / /

/ / /

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

"For purposes of this section, the term 'insolvent' means the excess of liabilities over the fair market value of assets. With respect to any discharge, whether or not the taxpayer is insolvent, and the amount by which the taxpayer is insolvent, shall be determined on the basis of the taxpayer's assets and liabilities immediately before the discharge."

Therefore, a determination of insolvency requires evidence of the date of the discharge and of the taxpayer's assets and liabilities "immediately before" that date.

In this case, the parties agree that Plaintiffs received four discharges of indebtedness totaling $138,288 during 2010. Because Plaintiffs did not provide 1099-C forms to document the discharges, the exact dates are not known with certainty. At trial, all parties concentrated on January 14, 2010, the date Claussen testified that roughly $130,000 had been discharged upon the bank sale of foreclosed property. The court will provisionally consider January 14, 2010, as the date of discharge.

Plaintiffs' claim to the insolvency exclusion depends largely on the alleged $2 million liability to Middleman Northwest, Inc.

Not every obligation to pay is a "liability" for the purpose of IRC section 108(d)(3), but only those obligations that the taxpayer will probably be called upon to pay. *Merkel v. Commissioner*, 109 TC 463, 476 (1997), *aff'd*, 192 F3d 844 (9th Cir 1999).

"[A] taxpayer claiming the benefit of the insolvency exclusion must prove (1) with respect to any obligation claimed to be a liability, that, as of the calculation date, it is more probable than not that he will be called upon to pay that obligation in the amount claimed and (2) that the total liabilities so proved exceed the fair market value of his assets[.]"

*Id*. Thus, a loan guarantee that is contingent on the borrower's default is not a liability unless, as of the calculation date, it is probable that the borrower will default. *See id*. at 485–86 (guarantee contingent on bankruptcy of borrower not liability because likelihood of borrower's bankruptcy unproven). It would be inaccurate to state, as Defendant did at trial, that a loan guarantee is not a

liability until a collection attempt is made. It is enough for a taxpayer to show that, immediately before the debt discharge, the guarantor would probably be required to pay.

Here, the judgment in Claussen's criminal case is convincing evidence of Claussen's legal obligation to pay Middleman. Claussen's fraudulent activity between April 2007 and January 2008 caused him to incur a legal obligation to repay Middleman, and $2.1 million of that obligation was still unpaid in 2014 when he was ordered to make restitution by the federal court.

However, a judgment of restitution in a criminal case does not by itself demonstrate that a debt to the victim of the crime will be recognized for tax purposes at the time of the crime. Since the United States Supreme Court issued *James v. United States*, 366 US 213 (1961), money obtained by fraud is taxed as income to the fraudster. Subsequent courts have rejected the argument that gains from fraud are offset by an obligation of repayment to the victim. *McSpadden v. Comm'r*, 50 TC 478, 488 (1968) (swindler had no debt obligation to victim beyond "the general obligation of a person who defrauds another to make restitution"); *Moore v. United States*, 412 F2d 974, 978 (5th Cir 1969) (no debtor–creditor relationship between swindler and victim because no " 'consensual recognition' of an obligation to repay and exact terms of repayment"). It makes no difference whether a swindler's scheme takes the form of a loan. *See U.S. v. Rochelle*, 384 F2d 748 (5th Cir 1967).

In the present case, on the date of discharge Claussen clearly owed Middleman "the general obligation of a person who defrauds another to make restitution." *See McSpadden*, 50 TC at 488. The documentation does not show that Claussen owed Middleman anything more than that general obligation. The Factoring Agreement with its strongly worded guarantee does not state the amount owed. The only other indication of the amount of the debt to be found in the documentation provided is on the 2008 and 2009 partnership returns of FUSP LLC.

However, FUSP LLC did not sign the contract with Middleman—First U.S. Pallets, Inc. did. Plaintiffs did not present evidence of the subsequent financial state of First U.S. Pallets, Inc. Plaintiffs did not present evidence regarding the relationship between First U.S. Pallets, Inc. and FUSP LLC. Plaintiffs presented no evidence that the liability listed on FUSP LLC's returns was the same liability that arose out of the contract with First U.S. Pallets, Inc. Additionally, Plaintiffs did not present evidence to show that Claussen was more likely to be called upon to pay the debt than was FUSP LLC—which reported $4 million in assets on its 2009 return.

Just as the general obligation of restitution would not yield a tax benefit to a fraudster by offsetting income, so by analogy it will not yield a tax benefit to Claussen by offsetting Plaintiffs' assets. Plaintiffs have not carried their burden of proof with respect to the alleged liability to Middleman.

Likewise, there are many gaps in Plaintiffs' evidence of their other liabilities. Plaintiffs did not document the January 2010 balance of the first mortgage on their home or on their rental property. Their documentation of business debts showed other parties were jointly liable and stated that collateral of undetermined value would be sold to cover the debts. No evidence was presented identifying the $590,000 judgment issued against Claussen and FUSP LLC on FUSP LCC's 2009 partnership return, leaving the question open whether the debt was still outstanding in January 2010. Likewise, Plaintiffs did not provide evidence that the federal tax notices, one of which predated the debt discharge by over 20 months, were still outstanding. All told, the evidence is sufficient to quantify roughly $160,000 in debts outside the Middleman guarantee: $30,000 in credit card debt, $27,829.43 past due on their home's first mortgage, $38,944 balance on its second mortgage, and $59,356.38 owing in state taxes to Defendant.[4]

---

[4] Regarding the last item, Plaintiffs' evidence for the state tax debt was as problematic as their evidence for the federal tax debt, but the court accepts Claussen's testimony that it was still owed because Defendant—which

Plaintiffs admitted to holding assets of approximately $900,000 at the end of 2009. Given the lack of evidence regarding their 2010 liabilities, they have not carried their burden of proving insolvency.

## III.  CONCLUSION

After carefully considering the evidence presented, the court finds that Plaintiffs did not carry their burden of proving they were insolvent immediately before their debt was discharged. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of December, 2016.


_____
POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on December 9, 2016.*

---

surely had the relevant records—did not submit evidence to rebut Claussen's claim.